**E-FILED**
Thursday, 08 October, 2009  02:37:55 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| NICOLE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-cv-1118 |
| | ) | |
| | ) | |
| PEORIA COUNTY, et al., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>O P I N I O N   &   O R D E R</u>

This matter is before the Court on four related motions: two Motions for Summary Judgment by Defendants, and cross-motions for sanctions filed by Plaintiff and Defendants.  The Motion for Summary Judgment by Defendant-Officers Cargill, Dearing, DuBois, and Trowbridge was filed with the Court on May 29, 2009 (Doc. 37) (hereinafter "Officers' MSJ").  Plaintiff responded to this Motion on June 22, 2009, and Defendant-Officers replied to Plaintiff's response on July 6, 2009.  (Docs. 40, 43) (hereinafter "Response" and "Officers' Reply").  The remaining Defendants, Peoria County and Sheriff McCoy, also filed a Motion for Summary Judgment on May 29, 2009 (Doc. 38) (hereinafter "County MSJ").  Plaintiff's Response to this Motion was filed on June 22, 2009, and Defendants replied to this Response on July 6, 2009.  (Docs. 39, 42) (hereinafter "Response to County MSJ" and "County Reply").  The parties have also filed cross-motions for sanctions alleging misconduct in the summary judgment filings.  (Docs. 44 and 46).  For the reasons explained below, the Officers' Motion for Summary Judgment is denied in

part and granted in part, the County's Motion for Summary Judgment is denied in part and granted in part, and the Motions for Sanctions are denied.

## FACTUAL BACKGROUND

On January 20, 2008, Plaintiff got into an argument with her boyfriend at his apartment, and eventually called the police.  (Officers' MSJ at 2-3; Response at 2-3; Davis Dep. at 14, 16-17).  Before Peoria City Police officers arrived at 7:00 p.m., Plaintiff's boyfriend left the apartment and locked her out of it, which is where she was when the police officers arrived.  (Officers' MSJ at 3; Response at 3; Davis Dep. at 17-18).  Plaintiff told police that she no longer needed their help.  (Response at 10; Davis Dep. at 17-18).  The police arrested Plaintiff for obstructing an officer, and transported her to the Peoria County Jail, where she was escorted into the jail's intake screening area.  (Officers' MSJ at 3; Response at 3; Davis Dep. at 53).  Plaintiff had had four beers with her boyfriend, and Officers Cargill and Dearing, who were on duty the night Plaintiff was arrested, believed that she was intoxicated; Plaintiff maintains that she was at most "tipsy."  (Officers' MSJ at 2, 4; Response at 2-4; Davis Dep. at 16, 25; Cargill Dep. at 23).  Plaintiff admits that she "yelled some obscenities" at Officer Cargill and called her a "bitch," because Officer Cargill had roughly "yanked" her out of the paddy wagon.  (Officers' MSJ at 3-4; Response at 4; Davis Dep. at 22-24).  Officers Cargill and Dearing testified that Plaintiff also verbally threatened Officer Cargill, but Plaintiff denies this.  (Officers' MSJ at 4; Response at 4; Cargill Dep. at 21, 23, 25-26; Dearing Dep. at 28; Davis Dep. at 54-55).

At the point Plaintiff got to the jail, her story and the Officers' differ dramatically.  According to Plaintiff, she was placed in a  cell, where she starting "banging on the door asking to use the phone."  (Response at 5; Davis Dep. at 25). Plaintiff testified that she was told several times to be quiet by a male officer, then Officer Cargill came by after about an hour and said "Shut the fuck up, nigger."[1] (Response at 10; Davis Dep. at 25).  Plaintiff replied by calling Officer Cargill "every name in the book."  (Response at 4; Davis Dep. at 25).  Officer Cargill then walked away and returned with two male officers, Dearing and Trowbridge.  (Response at 5-6).  Officers Cargill and Dearing entered the cell.  (Response at 10-11).  Officer Cargill threw Plaintiff to the ground.  Plaintiff got back up to her knees, and Officer Cargill pulled Plaintiff's right arm behind her back such that her fingertips were touching her neck, then "slammed" her knee into Plaintiff's thigh.  Officer Cargill then bit Plaintiff's shoulder.  One of the officers pulled out a wad of Plaintiff's hair, and one either kneed or punched her in the back; because they were behind her, Plaintiff is unsure who did this, or if Officer Dearing was possibly attempting to stop Officer Cargill's actions.  Plaintiff's jewelry was removed during this beating,

---

[1]      In Defendant-Officers' Reply, Defendant-Officers respond to each of those Additional Material Facts presented by Plaintiff that they dispute by also stating that the given fact is immaterial.  This is patently incorrect, as most of these facts are precisely on-point as to Plaintiff's claims.  Defendant-Officers seem to be under the impression that, because the only evidence of these asserted facts at this point is Plaintiff's deposition testimony, these facts are unable to be proven and therefore immaterial.  As discussed below, a plaintiff can defeat a motion for summary judgment by her own sworn testimony as to facts within her personal knowledge. Therefore, these facts, supported by her testimony as to her personal knowledge, are quite material at the summary judgment stage.  Defendant-Officers may certainly dispute these facts, but baldly asserting that disputed material facts are nonetheless immaterial does not mislead the Court.

which lasted only "a minute or two." The only resistance Plaintiff gave was to refuse to put her hands up while she was on her knees being beaten, and that she said nothing else. (Response at 6-7, 11; Davis Dep. at 26-29).

The officers' story is quite different. At 7:57 p.m., Plaintiff was placed in the detox cell by Officers Cargill and Dearing because she appeared intoxicated. (Officers' MSJ at 4; Cargill Dep. at 23-26, 33). Around 9:00 p.m., Officer Cargill noticed that Plaintiff was still wearing jewelry, which jail inmates are prohibited from having. The Officers maintain that they requested that Plaintiff remove her jewelry, and that Plaintiff refused. (Officers' MSJ at 4; Cargill Dep. at 40; DuBois Dep. at 11-13). (On the other side, Plaintiff represents that she was never asked to remove her jewelry. (Response at 5-7; Davis Dep. at 25).) Officers Trowbridge and Dearing came to the detox cell to assist Officer Cargill in removing Plaintiff's jewelry; Officers Cargill and Dearing entered the cell and removed the jewelry, and Officer Trowbridge stayed by the door. (Officers' MSJ at 4-5; Cargill Dep. at 36-39; Trowbridge Dep. at 21-22). Officer DuBois noticed that the other officers had entered the detox cell, and he "stood by" in order to help if needed. (Officers' MSJ at 5; DuBois Dep. at 9-10).

Officers Cargill, Dearing, and Trowbridge testified variously that Plaintiff either sat on her hands, put them behind her back, or folded them in front of her body as soon as they entered the cell, and she repeatedly stated "If I move my hands, you are going to beat me," "They are beating me," or "I don't want to die. I love Jesus." (Officers' MSJ at 5; Cargill Dep. at 40-42, 52; Dearing Dep. at 34-35; Trowbridge Dep. at 23-24; DuBois Dep. at 10-16). The officers testify that there was

no beating, and that Officers Cargill and Dearing removed Plaintiff's necklace and two earrings peacefully around 9:16 p.m., while Officers Trowbridge and DuBois "observed." (Officers' MSJ at 5; Cargill Dep. at 40-43, 53-54; Dearing Dep. at 30-35; Trowbridge Dep. at 23-24). Officer Cargill denied that she or any other officers used any racial slurs toward Plaintiff. Officer Dearing did not use a racial slur toward Plaintiff, or hear Officer Cargill do so, which Plaintiff does not dispute. (Officers' MSJ at 4; Cargill Dep. at 48; Dearing Dep. at 45-46).

Plaintiff stayed in the cell until 2:18 a.m. the next morning, January 21, 2008, when Officer Ahart came to the cell in response to her request to use the phone. Plaintiff told Officer Ahart what had transpired the night before, and Officer Ahart fetched Nurse Roe to examine her. At 2:30 a.m., she was examined by Nurse Roe at the jail, who noted that Plaintiff's right wrist and left cheek were slightly swollen, and that her right outer thigh was reddened. Nurse Roe gave Plaintiff an ice pack for her wrist, and Tylenol. (Officers' MSJ at 6; Response at 7; Davis Dep. at 30-32; Cargill Dep. at 55-57; Smith Dep. at 12-13).

At this time, Plaintiff was also booked by Officer Ahart; she had not previously been booked and had not been the subject of a probable cause determination. (Officers' MSJ at 6; Response at 7; Cargill Dep. at 77-78; Davis Dep. at 32-33). Plaintiff was placed in the women's general holding cell, and was released at 4:30 a.m. January 21, 2008. (Officers' MSJ at 6; Response at 7; Davis Dep. at 32).

That morning, Plaintiff's daughter, Kimberly Hobson, observed Plaintiff's condition, and encouraged her to go to the hospital. (Officers' MSJ at 6; Response at

8; Davis Dep. 34-35).  Ms. Hobson testified that the tooth mark on Plaintiff's

shoulder was "deep, and you could see the purple pigmentation on her arm that it

was from a mouth….You could tell that it was from a person." (Hobson Dep. at 10-

12, 16-17).  Plaintiff sought medical treatment at Methodist Hospital, where she

was treated by Dr. Jason Stringer.  (Officers' MSJ at 6; Response at 8; Davis Dep. at

35; Stringer Dep. at 7-8).  Dr. Stringer noted that Plaintiff had pain, swelling, and

bruising or a contusion of her right wrist, blunt injuries, and moderate elevation of

systolic blood pressure.  (Officers' MSJ at 6; Response at 8; Stringer Dep. at 29-33).

In addition, Plaintiff reported that she had been bitten by one of the officers, and

Dr. Stringer noted bruising at the location of the reported bite on her shoulder.  Dr.

Stringer diagnosed Plaintiff with a human bite wound, as the bruising was

consistent with the reported cause of her injury.  (Officers' MSJ at 6; Response at 8;

Stringer Dep. at 29-31, 49-50).  In his deposition, Dr. Stringer testified that he

would not necessarily expect to see broken skin or bleeding resulting from a bite

through several layers of clothes such as Plaintiff was wearing on the night of

January 20, 2008.[2]  (Stringer Dep. at 50-51; Davis Dep. at 35-36).  At the hospital,

Plaintiff was treated with an Ace wrap and a splint for her wrist, an ice pack, and

---

[2]     In their MSJ, Defendant-Officers state that because Plaintiff "destroyed" the
evidence of the bite by failing to request that a DNA swab or impression of the bite
mark be taken at the hospital, the Court should presume that this evidence would
have been unfavorable to Plaintiff.  (Officers' MSJ at 17-18).  In support of this,
Defendant-Officers cite to several cases in which parties intentionally destroyed or
failed to preserve evidence.  Dr. Stringer testified that he has never had a patient
request a DNA swab or impression of a bite wound, and that it is not the hospital's
normal practice to conduct these tests.  (Stringer Dep. at 36-37).  The Court will not
hold against Plaintiff her "failure" to know of or demand that medical personnel
conduct a non-routine investigatory test.  This is not bad faith destruction of
evidence.

prescription-strength Tylenol, and received a note excusing her from work and ordering light duty for her right wrist. (Officers' MSJ at 7; Response at 9; Stringer Dep. at 32-34, 41, 44).

The Peoria County Sheriff's Office began an investigation of the January 20 incident when medical staff reported it to them. At the hospital, Peoria County Sheriff's Officers Hoyle and Guyton took photographs of Plaintiff's injuries and interviewed her. (Officers' MSJ at 7; Response at 9; Davis Dep. at 35-39; Smith Dep. at 8). After leaving the hospital, Plaintiff filed a civilian complaint against the Defendant Officers at the Peoria County Jail. Sheriff's detectives interviewed Officers Cargill, Dearing, DuBois, and Trowbridge, and concluded that Plaintiff's allegations were unfounded, though Officer Smith agreed at his deposition that "it's basically he said/she said with this investigation." (Officers' MSJ at 7; Response at 9; Davis Dep. at 39; Smith Dep. at 15-17).

Plaintiff filed her Complaint in this Court on May 23, 2008, alleging that (1) Officers Cargill and Dearing used unconstitutionally excessive force against her in violation of 42 U.S.C. § 1983, (2) Defendant-Officers failed to intervene in the use of excessive force, in violation of § 1983, (3) Officers Cargill and Dearing violated the Illinois Hate Crime Act, (4) Sheriff McCoy is liable for the actions of Officers Cargill and Dearing under the doctrine of respondeat superior, and (5) Peoria County is liable for any judgments in the case under the Illinois Tort Immunity Act. (Doc. 1). The last two counts will be decided in the context of the Peoria County and Sheriff McCoy Motion for Summary Judgment. Defendant-Officers move for summary judgment as to the first four counts of Plaintiff's Complaint.

7

### MOTIONS FOR SUMMARY JUDGMENT

## I.    Legal Standard

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "[I]n reviewing a motion for summary judgment where each party's testimony relays a different version of the facts, we must view those facts in the light most favorable to the party opposing the motion." Payne v. Pauley, 337 F.3d 767, 773 (7th Cir. 2003).  All inferences drawn from the facts must be construed in favor of the non-movant; however, the court is not required to draw every conceivable inference from the record, only reasonable inferences.  Smith v. Hope School, 560 F.3d 694, 699 (7th Cir. 2009).  Only if the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.  McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997).

## II.    Analysis of Officers' Motion for Summary Judgment

### A.    Plaintiff's Count I: Excessive Force

Plaintiff alleges that Officers Cargill and Dearing used excessive force against her in violation of § 1983 on the night of January 20, 2008.  Defendant-Officers argue in their Motion for Summary Judgment and their Reply that (1) Plaintiff's injuries are de minimis and thus insufficient to support a claim under § 1983; (2) Plaintiff cannot make out a prima facie case showing the use of excessive

force; (3) even if Plaintiff can make out her prima facie case, Defendant-Officers'
conduct did not violate § 1983; and (4) Defendant-Officers are entitled to qualified
immunity.  Because, as will be explained below, Defendant-Officers relied on an
incorrect legal standard in formulating their arguments, the Court will not follow
their Motion's structure, but will discuss first the law properly applicable to the
excessive force claim, then determine whether summary judgment is appropriate
under the undisputed facts and applicable law.  The Court will then discuss
whether Defendant-Officers are entitled to qualified immunity.

>    **1.    Law Applicable to Excessive Force Claim by an Arrestee
>            or Detainee**

The Supreme Court has "reject[ed the] notion that all excessive force claims
brought under § 1983 are governed by a single generic standard. …In addressing an
excessive force claim brought under § 1983, analysis begins by identifying the
specific constitutional right allegedly infringed by the challenged application of
force."  Graham v. Connor, 490 U.S. 386, 393-94 (1989).  Three different
constitutional protections apply, depending upon the status of the person alleging
the use of excessive force, as a convicted prisoner, a pretrial detainee, or a mere
arrestee.  Kinney v. Indiana Youth Center, 950 F.2d 462, 465 (7th Cir. 1991); Titran
v. Ackman, 893 F.2d 145, 147  (7th Cir. 1990).  Plaintiff was obviously not a
convicted prisoner, to whom the Eighth Amendment's protection against only cruel
and unusual punishment would apply.  Therefore, Defendant-Officers' arguments

under the Eighth Amendment standard are inapplicable to this case.³  What is less

clear is whether Plaintiff was merely an arrestee, or if she was a pretrial detainee.

---

³       Defendant-Officers argue that at the time of the alleged use of excessive force by Officers Cargill and Dearing, Plaintiff was a pretrial detainee, and that, though her § 1983 claim thus arises under the Fourteenth Amendment, the test for "deliberate indifference" to a prisoner's health or safety under the Eighth Amendment applies to her claim just as though she was a convicted prisoner.  In support of this contention, Defendant-Officers cite a number of cases discussing correctional officers' "deliberate indifference" to risks to detainees' health and safety not caused directly by the officers' intentional conduct.

While for deliberate indifference claims, the difference between the protections afforded by the Eighth and Fourteenth Amendments is slight, "the distinction between the two constitutional protections assumes some importance for excessive force claims because the Due Process Clause, which prohibits all 'punishment,' affords broader protection than the Eighth Amendment's protection against only punishment that is 'cruel and unusual.'"  Lewis v. Downey, --- F.3d ----, 2009 WL 2835414, *4 (7th Cir. 2009).  Even assuming that Plaintiff was a pretrial detainee, rather than an arrestee, Defendant-Officers' argument that only standard drawn from the Eighth Amendment's narrower protections apply to her excessive force claim is without merit.

Defendant-Officers rely heavily on Wilson v. Williams, in which the Seventh Circuit, while holding that the Fourteenth Amendment's protections against pre-conviction punishment applied to pretrial detainees and that "reasonableness" is the appropriate standard, assumed without deciding that, "in the prison security context," "the applicable standard for excessive force claims is provided by the Eighth Amendment."  83 F.3d 870, 876 (7th Cir. 1996).  In Wilson, however, the officer claimed that the detainee had started a fight with him, while the detainee claimed that the officer had attacked him -- if the officer had started the fight, the Fourteenth Amendment's standard was "clearly appropriate," but if the detainee had started the fight, the Fourteenth Amendment "was arguably supplanted."  Id. (emphasis added).  In this case, the Defendant-Officers do not claim that Plaintiff physically provoked them to beat her: they admit that she "did not struggle with the officers," and that she "kneeled or sat on the floor" during the jewelry removal. (Officers' MSJ at 5).  Therefore, there is no reason in this case to depart from the general rule that Wilson states.

In their Reply, Defendant-Officers attempt to "bootstrap" their way into the Eighth Amendment by arguing that, because the removal of jewelry from detainees is a measure designed to increase the safety of jail conditions, this is "in effect about the safe conditions of confinement at a jail, and it would not be improper to apply the Eighth Amendment deliberate indifference standard."  (Officers' Reply at 6, 9).  "Conditions of confinement" cases allege that a "condition" within the jail caused the plaintiff's injury, not that an attempt to create safe "conditions" caused the injury. Many claims of excessive force, including successful ones, involve officers trying to

If Plaintiff was an arrestee, then the Fourth Amendment's "reasonableness" standard would apply to her treatment by the officers during the seizure of her person. If she was a pretrial detainee, then the Due Process clause would apply to prevent "punishment" by officers. Lewis v. Downey, 08-2960, 2009 WL 2835414, *4 (7th Cir. September 4, 2009); Kinney, 950 F.2d at 465; Titran, 893 F.2d at 147. Though the source of the Constitutional protection in these two situations differs, the analysis overlaps. See Wilson v. Williams, 83 F.3d 870, 875-76 (7th Cir. 1996) (upholding use in pretrial detainee case of jury instructions borrowed from Fourth Amendment arrestee cases as also "appropriate…by which to infer an intent to punish"); Titran, 893 F.2d at 147 ("Most of the time the propriety of using force on a person in custody pending trial will track the Fourth Amendment."). Typically, whether the officers' conduct was reasonable under the circumstances will control the analysis. Titran, 893 F.2d at 147. See also FED. CIV. JURY INSTR. 7TH CIR. 7.08 (jury must find that defendant used "unreasonable force"). Conduct that is "'grossly disproportionate' to the provocation, that 'shocks the conscience,' and yields 'severe injuries'" is not required under either the Fourth or the Fourteenth Amendment. Id. (citing Graham, 490 U.S. 386; Bell v. Wolfish, 441 U.S. 520 (1979)); Herzog v. Village of Winnetka, Ill., 309 F.3d 1041, 1043 (7th Cir. 2002)). Given the facts that the analysis under both Constitutional provisions is based on reasonableness in the circumstances, that the Court has not been briefed on this issue, and that Plaintiff

---

enforce jail rules or to restrain fighting detainees. See, e.g., Titran, 893 F.2d 145 (where plaintiff-detainee refused to don jail jumpsuit, reasonableness standard applied to excessive force claim against officers who forced her into it). That fact does not transform them into "conditions of confinement" cases, and will not do so here, either.

was in custody at the time of the alleged application of excessive force, the Court

will assume, without deciding, that Plaintiff was a detainee.[4]  The Court's analysis

of the Motions for Summary Judgment would be the same if Plaintiff were an

arrestee.  In order to have violated § 1983, the Officers' conduct had to be

unreasonable under the circumstances.

Finally, Defendant-Officers argue that an excessive force claim requires more

than "de minimis" injuries, and that Plaintiff's case thus fails as a matter of law,

even if a "reasonableness" standard is applied.  Defendant-Officers cite Seventh

Circuit Pattern Jury Instruction 7.08's optional "Harm to Plaintiff" element, and

Instruction 7.09's optional list of "reasonableness" factors to argue that the Court

should consider the level of harm to Plaintiff in determining that Defendant-

---

[4]     There is a strong argument to be made on the undisputed facts that Plaintiff
was an arrestee, who would be protected under the Fourth Amendment.  In Titran,
the Seventh Circuit assumed that a person who had not been put in a cell, but who
was present in the jailhouse and who had been booked, had crossed "the line
between 'arrest' and 'detention.'"  Titran, 893 F.2d at 147.  Later, in Villanova, the
Seventh Circuit stated that "the Fourth Amendment governs the period of
confinement between arrest without a warrant and the preliminary hearing at
which a determination of probable cause is made, while due process regulates the
period of confinement after the initial determination of probable cause."  Villanova
v. Abrams, 972 F.2d 792, 797 (7th Cir. 1992).  Here, at the time of the alleged abuse,
Plaintiff was being held in a cell, but had been arrested without a warrant, had not
been booked, and had not been subject to a judicial determination of probable cause.
        The Court need not decide at this point whether Plaintiff was an arrestee or a
pretrial detainee.  Whether she had crossed this line or not, "[i]t does not follow that
the officers acquired greater ability to assault and batter" her even if she was a
pretrial detainee rather than an arrestee.  Titran, 893 F.2d at 147.  Indeed, the
Seventh Circuit Jury Instructions concerning excessive force do not distinguish
between the Fourth and the Fourteenth Amendment analyses: the same
instructions are applied to both categories of persons, and the Instructions are titled
"Fourth/Fourteenth Amendment -- Excessive Force Against Arrestee or Pretrial
Detainee" FED. CIV. JURY INSTR. 7th Cir. 7.08 (2005).  As discussed above,
reasonableness in the circumstances is the key analysis for both stages.

Officers' alleged conduct was reasonable as a matter of law because it resulted in only de minimis injuries. The Committee Comments to Instruction 7.08, covering "Fourth Amendment/Fourteenth Amendment: Excessive Force Against Arrestee or Pretrial Detainee -- Elements" express reservations about the use of the "harm" element, citing case law strongly suggesting that "harm" to the Plaintiff is not an element of an excessive force claim. FED. CIV. JURY INSTR. 7TH CIR. 7.08 (citing McNair v. Coffey, 279 F.3d 463, 468 (7th Cir. 2002; Herzog, 309 F.3d at 1043; Lanigan v. Village of East Hazel Crest, Illinois, 110 F.3d 467, 470 (7th Cir. 1997; Briggs v. Marshall, 93 F.3d 355, 360 (7th Cir. 1996)).

For Instruction 7.09, "Fourth Amendment/Fourteenth Amendment: Excessive Force -- Definition of 'Unreasonable,'" the Committee Comments merely list a number of factors that may be used for the jury's consideration of the "reasonableness under the circumstances" of the force used, including "the extent of the plaintiff's injury." FED. CIV. JURY INSTR. 7TH CIR. 7.09. It is plain that the inclusion of this factor is not meant to imply that a certain level of harm to the plaintiff is required (these are labeled "factors," not "elements"), as is also made clear in the discussion of Instruction 7.08 above, but rather that the extent of the plaintiff's injury can be used as a gauge of the amount of force used and thus its overall reasonableness. Even if Plaintiff's injuries were only de minimis, this would not alone justify a finding that Defendant-Officers' conduct was reasonable as a matter of law. As it is, Plaintiff has presented sufficient evidence to permit a reasonable jury to find that her injuries were more than de minimis.

13

## 2.    Analysis of Excessive Force Claim

Defendant-Officers argue that summary judgment must be granted in their favor because Plaintiff "cannot prove" her allegations that excessive force was used. In support of this argument, they assert (1) that the officers provided a different version of events at the jail the night of January 20, 2008, and (2) that, because other events could have caused Plaintiff's injuries, her testimony must be disbelieved.  Defendant-Officers have reversed the rule regarding conflicting testimony and the inferences that are to be drawn at the summary judgment stage.

It is true that a plaintiff's conclusory allegations and speculative testimony cannot alone defeat a motion for summary judgment.  <u>Payne</u>, 337 F.3d at 772-73 (testimony as to non-moving parties' speculations, assumptions, conclusions, or subjective beliefs will not defeat summary judgment).  However, a plaintiff may defeat a motion for summary judgment by her own sworn testimony, if that testimony regards matters within her personal knowledge.  <u>Paz v. Wauconda Healthcare and Rehabilitation Centre, LLC</u>, 464 F.3d 659, 664 (7th Cir. 2006) ("We have long held that a plaintiff may defeat summary judgment with his or her own deposition."); <u>Payne</u>, 337 F.3d at 772-773 (non-moving party's factual testimony can defeat summary judgment); <u>Wilson</u>, 997 F.2d at 351 (7th Cir. 1993) (pretrial detainee's affidavit sufficient to defeat summary judgment in excessive force claim).

In addition, all reasonable inferences are to be drawn in favor of the non-moving party, not the moving party, and the Court is not to make credibility determinations.  <u>Payne</u>, 337 F.3d at 770.  At summary judgment, the Court must "[avoid] the temptation to decide which party's version of the facts is more likely

true," which is exactly what Defendant here asks the Court to decide.  Id.  It is an available inference that something other than the officers was the source of Plaintiff's injuries and a jury might decide that this is more likely, but at summary judgment, the Court must draw the reasonable inference that Plaintiff's injuries occurred as she has testified.

Defendant-Officers also argue that Officer Dearing cannot be held liable on the excessive force claim because Plaintiff was unsure of whether Officer Dearing was participating in the beating or was attempting to stop Officer Cargill, and that she therefore cannot prove that he violated Plaintiff's rights under § 1983.  (Def. MSJ at 15-16).  Plaintiff has testified that Officer Dearing was in the cell during the beating, and that she was unable to see whether he was hitting her from behind.  It is true that Officer Cargill can only be held individually liable under § 1983 for his own actions.  Palmer v. Marion County, 327 F.3d 588, 594 (7th Cir. 2003).  Here, though, Plaintiff's testimony that Officer Dearing was in the cell and that he was behind her such that she could not see what he was doing is sufficient to withstand summary judgment; the inference she has drawn by alleging his participation in the beating is a reasonable one based on the factual circumstances.  Payne, 337 F.3d at 772 (personal knowledge can be based on reasonable inferences from personal experience).

Plaintiff testifies that she was subjected to an unprovoked beating by one or two officers while she was held in jail.  The Officers testify that there was no beating, but rather that they peacefully removed Plaintiff's jewelry without using any force beyond that necessary to remove the jewelry.  These are starkly

contrasting stories, and the Court could not determine whether the Officers' conduct was reasonable without resolving these disputed issues of fact.  Plaintiff, by her deposition testimony, has met her burden of showing that genuine issues of material fact remain to be decided as to the actual events of January 20, 2008, and whether the officers' conduct was reasonable in the circumstances; a reasonable jury could find that Plaintiff's version of events is true.  In that event, the officers' conduct would be unreasonable in the circumstances.  On the other hand, a jury could decide to credit the officers' testimony, in which case the amount of force used was reasonable.  It is not for the Court at the summary judgment stage to make this credibility determination.  Because the excessive force "reasonableness inquiry 'nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom[,]…summary judgment…in excessive force cases should be granted sparingly.'" Abdullahi v. City of Madison, 423 F.3d 763, 773 (7th Cir. 2005) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)).  For the foregoing reasons, summary judgment in favor of the Defendant-Officers is denied as to the excessive force charge.

### 3.      Qualified Immunity

Defendant-Officers assert that summary judgment should be granted in their favor because they are entitled to qualified immunity as to the excessive force claim. Qualified immunity protects government officials from civil suits alleging Constitutional violations that were not "clearly established" at the time of their conduct.  Pearson v. Callahan, 129 S.Ct. 808, 815 (2009).  In Pearson, the Supreme Court established that the two elements of qualified immunity, whether the facts

properly allege a Constitutional violation and whether the Constitutional right was "clearly established" at the time of the alleged violation, can be addressed in whatever order the District Court finds, in its discretion, to best fit the case.  <u>Id</u>. at 815-16, 818.  If either of these elements is missing, the official in question is entitled to qualified immunity.  In the instant case, as the discussion above shows that the Plaintiff has alleged a Constitutional violation of her right to be free from excessive force while in police custody and has offered sufficient evidence to withstand summary judgment, the Court will move to the "clearly established" prong of the analysis.[5]

A defendant is entitled to qualified immunity if the statutory or Constitutional right allegedly violated was "clearly established" at the time of the violation, such that "a reasonable person would have known" of the right.[6]  <u>Id</u>. at

---

[5]  In excessive force cases where qualified immunity is claimed, it might appear that there is some overlap between the two types of "reasonableness:" the officer's use of force had to be reasonable under the § 1983 excessive force standard, and a reasonable officer would have to understand that a certain level of force was unconstitutional under the qualified immunity standard.  The Seventh Circuit recently offered a helpful explanation of how these two "reasonablenesses" work together, in a § 1983 case where the applicable standard was also "reasonableness:" "while the substantive constitutional standard protects officers' reasonable factual mistakes, qualified immunity protects them from liability where they reasonably misjudge the legal standard."  <u>Catlin v. City of Wheaton</u>, 574 F.3d 361, 369 (7th Cir. 2009).

[6]  In their Reply, Defendant-Officers spend almost an entire page pointing out the impracticality of applying different standards to detainees based on their arraignment status, and arguing that this "confusion in the courts" should weigh in favor of qualified immunity.  (Officers' Reply at 9).  Defendant-Officers should be glad to learn, then, that "reasonableness under the circumstances" is the test that applies to both arrestees and detainees, regardless of whether they have been arraigned.  It is immaterial that "Plaintiff has provided no evidence that the officers were aware or had any knowledge of whether she had been arraigned."  (Officers'

815-16.  A clearly established right need not have been established in "earlier cases with materially similar facts," and "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  Finsel v. Cruppenink, 326 F.3d 903, 906 (7th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)).

The right of detainees to be free from excessive force while in police custody was clearly established in the Seventh Circuit well prior to the incident alleged in this case, such that a "reasonable official would understand" that detainees had a right to be subject to only reasonable applications of force and may not be punished by officers.[7]  See Wilson, 83 F.3d at 875-76 (unprovoked applications of force by officers governed by reasonableness).  In Titran, the Seventh Circuit specifically held that if "officers intentionally restrained, jolted, and roughed up" a pretrial detainee "without physical provocation from her, their behavior was unreasonable."

Reply at 9).  The same standard of reasonableness applies in both situations.  There is no "confusion in the courts."  This Circuit's precedent is clear.

[7]     Even if Plaintiff was an arrestee, "the right to be free of excessive force during an arrest has long been established, making immunity unavailable if the officers indeed applied too much."  Titran, 893 F.2d at 146.  Some force may be used to effect an arrest, but it must be reasonable.  The reasonableness of a given use of force during an arrest requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Graham, 490 U.S. at 396 (internal citations omitted).  The courts consider several factors, "including severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.  Here, where the ostensible "crime" was obstructing an officer, and Plaintiff was in custody and not resisting, fighting, or attempting to flee, a reasonable officer could not believe that it was reasonable for him to throw her to the floor, punch or kick her, wrench her arm, and bite her in an effort to remove her jewelry, especially if she had not been instructed to remove her jewelry.  See also Bell, 321 F.3d 637; Lanigan, 110 F.3d 467; Abdullahi, 423 F.3d 763; Sallenger v. Oakes, 473 F.3d 731 (7th Cir. 2007).

<u>Titran</u>, 893 F.2d at 148.  Case law had clearly established prior to 2008 that the intentional use of force against a detainee without provocation from her is a violation of § 1983.

Here, Plaintiff has testified that, though she did not physically attack or otherwise provoke the officers, they intentionally threw her to the ground, kicked or kneed her, twisted her arm, and bit her.   The officers testify that they did not do any of these things, but merely removed Plaintiff's jewelry.  Both agree that Plaintiff did not resist their efforts or become violent.  Under the circumstances Plaintiff describes, a reasonable officer would have known that it would be unlawful for officers to throw to the floor, punch or kick, wrench the arm of, and bite an unresisting arrestee or detainee in an effort to remove her jewelry, especially if, as Plaintiff testified, the purpose of the encounter was never explained to the arrestee or detainee so that she might comply.  The circumstances Plaintiff alleges do not fall into "the sometimes 'hazy border between excessive and acceptable force,'" in which qualified immunity gives officers the benefit of the doubt.  <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001) (<u>quoting</u> <u>Priester v. Riviera Beach</u>, 208 F.3d 919, 926-27 (11th Cir. 2000)), overruled on other grounds by <u>Pearson</u>, 129 S.Ct. 808.  For these reasons, summary judgment in favor of the Defendant-Officers' claim of qualified immunity on the excessive force claim is denied.

**B.     Plaintiff's Count II: Failure to Intervene**

Plaintiff also claims that the Officers Trowbridge and DuBois[8] violated her constitutional rights by their failure to intervene to prevent or stop the alleged use of excessive force against her.  Defendant-Officers argue that (1) because Plaintiff cannot make out an excessive force violation, there was logically no failure to intervene to stop or prevent such a violation; (2) Officers Trowbridge and DuBois were not aware that excessive force was being used against Plaintiff; and (3) Officers Trowbridge and DuBois did not have a reasonable opportunity to intervene. Defendant-Officers' first argument is rendered moot by the Court's decision to deny summary judgment as to Plaintiff's excessive force claim; as discussed above, Plaintiff has offered enough evidence to withstand summary judgment.  The other two arguments track the failure to intervene analysis.  In addition, Defendant-Officers argue that the officers are entitled to qualified immunity on this count.

**1.     Analysis of Failure to Intervene Claim**

In order to make a "failure to intervene" claim under § 1983 against an officer who was present when her constitutional rights were being violated by a fellow officer, a plaintiff must show that the officer had reason to know that excessive force was being used, and that the "officer had a realistic opportunity to intervene to prevent the harm from occurring." Abdullahi, 423 F.3d at 774 (quoting Yang v. Hardin, 37 F.3d 282, 285 (7th Cir.1994)).

---

[8]     As Defendant-Officers point out in their Motion for Summary Judgment, it was unclear from the Complaint against which officers Plaintiff made this claim - she did not name the officers charged.  Plaintiff's Response, though, indicates that the failure to intervene claim is asserted against Officers Trowbridge and DuBois, and the Court will assume that this is the case.  (Response to Officers' MSJ at 16).

Taking all inferences in favor of Plaintiff, as is required at summary judgment, a reasonable jury could find that Officers Trowbridge and DuBois had reason to know that excessive force was being used against Plaintiff.  It is undisputed that these officers were present during the alleged beating, and the level of violence testified to by Plaintiff would allow a reasonable jury to find that they were aware of its extent, notwithstanding the fact that Plaintiff did not call out for help or Defendant-Officers' contention that Officer Cargill's body would have been blocking their view.  In addition, as discussed in the context of the officers' qualified immunity defense to Plaintiff's excessive force claim, a reasonable officer who was aware of such a beating would have known that it was unconstitutionally excessive, such that he had a duty to intervene.  As the factual events of January 20, 2008 are disputed, the Court cannot say as a matter of law that Officers Trowbridge and DuBois did not have reason to know that excessive force was being used against Plaintiff.  See Abdullahi, 423 F.3d at 775 ("[W]ithout knowing what [the excessive force defendant] did or how his conduct appeared to onlookers, it would be difficult to say that, as a matter of law, a reasonable officer could not have known that [the excessive force defendant's] conduct violated [the plaintiff's] constitutional rights.")

Likewise, a reasonable jury could find that the officers had a realistic opportunity to intervene.  There is a realistic opportunity to intervene if an officer could have "called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop." Abdullahi, 423 F.3d at 774 (7th Cir. 2005) (quoting Yang, 37 F.3d at 285).  The Seventh Circuit has noted that "[w]hether an officer had

sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." Lanigan, 110 F.3d at 478.  It is undisputed that these officers were in or near Plaintiff's cell during the alleged beating.  Though the alleged beating apparently lasted for only a short time, it is not impossible for a reasonable jury to conclude that Officers Trowbridge and DuBois could have "called for a backup, called for help, or at least cautioned" that their fellow officers stop their use of violence.  Abdullahi, 423 F.3d at 774 (summary judgment inappropriate though force against plaintiff exerted for only 30-45 seconds).  Summary judgment is therefore inappropriate as to the failure to intervene claim.

### 2.    Qualified Immunity

Summary judgment as to Defendant-Officers Trowbridge's and DuBois' claim of qualified immunity is also inappropriate.  To defeat the claim of qualified immunity, Plaintiff must show that the Defendant-Officers violated their clearly established duty to intervene. Pearson, 129 S.Ct. at 815.  As discussed above, Plaintiff has raised a genuine issue of material fact as to whether the beating took place, as well as whether Officers Trowbridge and DuBois were aware that excessive force was being used and had the opportunity to intervene.  Thus, Plaintiff has established that, if her version of the facts is believed, a reasonable jury could find that Officers Trowbridge and DuBois violated their duty to intervene.

Officers Trowbridge's and DuBois' duty to intervene must have been clearly established at the time of the alleged violation, as well, or they will be entitled to qualified immunity.  It was clearly established well before 2008 that officers have a duty to intervene where possible to prevent or stop the application of unreasonable force, even if they could have only "called for a backup, called for help, or at least cautioned [the excessive-force defendants] to stop." Yang, 37 F.3d at 285. See also Abdullahi, 423 F.3d at 774; Lanigan, 110 F.3d at 477-78.  In Abdullahi, the Seventh Circuit decided that, where "the very nature of [the allegedly excessive force] remains undetermined, [such that] one can only speculate as to how visually obvious any violation…would have been" to other officers, summary judgment granting qualified immunity on a failure to intervene charge was inappropriate. 423 F.3d at 775.

A reasonable officer would understand that, if he saw a beating of the type to which Plaintiff has testified taking place, he would have a duty to intervene to stop it.  Under these facts, the failure to intervene was not the sort of reasonable mistake of law for which qualified immunity protects officers from litigation.  If the facts are as Plaintiff has testified, it would be unreasonable for an officer to believe that he had no duty to intervene to stop his fellow officers' beating of a detainee without any reason or provocation.  Since the actual events of January 20, 2008 are in dispute, summary judgment cannot be granted to Officers Trowbridge and DuBois on their qualified immunity claim.

## C.     Plaintiff's Count III: Illinois Hate Crime Act

Finally, Defendant-Officers argue that summary judgment is warranted on

Plaintiff's hate crime claim.  To show a violation of the Illinois Hate Crimes Act

(hereinafter "IHCA") on the basis of race, a plaintiff must show that the defendant,

"by reason of the actual or perceived race" of the plaintiff, committed one or more

listed crimes, including battery.  720 ILCS 5/12-7.1(a).  Further, the statute

provides that "any person suffering injury to his person[9]…as a result of hate crime

may bring a civil action."[10]  720 ILCS 5/12-7.1(c).  Plaintiff alleged in her Complaint

and has testified that the Officers committed a battery upon her because of her

race.  In her Response and her deposition testimony, Plaintiff indicates that her

---

[9]     In McCaleb v. Pizza Hut of America, the Northern District of Illinois held
that plaintiffs who were harassed at a restaurant, but apparently suffered no
physical or property injuries, had stated a claim for civil damages under the IHCA.
28 F.Supp.2d 1043 (N.D. Ill. 1998). This appears to be in conflict with the plain
language of subsection (c), defining the elements of the IHCA civil action, which
seems to require a physical or property injury.  720 ILCS 5/12-7.1(c) ("suffering
injury to his person or damage to his property").  As Plaintiff has offered evidence of
physical injury sufficient to withstand summary judgment, this inconsistency is not
important at this point.

[10]     The IHCA does not specify the level of proof as to the underlying commission
of a hate crime that a civil plaintiff is required to show, i.e., whether the plaintiff
must show the commission of the hate crime by the preponderance of the evidence
or beyond a reasonable doubt.  However, "[t]he criminality of predicate offenses in
an underlying civil statute…does not mandate application of a higher burden of
proof in a civil case."  U.S. v. Rogan, 459  F.Supp.2d 692, 716 n. 12 (N.D. Ill. 2006)
(citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 491 (1985) ("In a number of
settings, conduct that can be punished as criminal only upon proof beyond a
reasonable doubt will support civil sanctions under a preponderance standard.
…That the offending conduct is described by reference to criminal statutes does not
mean that its occurrence must be established by criminal standards.")).  Because
the Illinois legislature and courts have not indicated an intention to depart from
this general rule, the Court will assume that the elements of civil liability under the
IHCA, including the element of commission of a hate crime, are subject to the
preponderance-of-the evidence standard ordinarily applicable to civil suits.

belief as to the Officers' racial motivation is informed by Officer Cargill's use of a racial slur toward her.

Plaintiff's Complaint initially charged both Officers Cargill and Dearing with violation of the IHCA, but Plaintiff's argument in her Response seems to indicate that the claim is made only against Officer Cargill.[11]  It is undisputed that Officer Dearing was not present when Officer Cargill allegedly used this racial slur against Plaintiff, and that he did not himself use a racial slur against Plaintiff.  Because no evidence has been presented that Officer Dearing, even if he was involved with the alleged battery of Plaintiff, was motivated by racial animus, summary judgment in his favor on this count is appropriate.

Defendant-Officer Cargill contends, first, that Plaintiff cannot show that Officer Cargill committed a battery against her, and that she cannot make the requisite showing of physical injury.  Under Illinois law, "[a] person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual."  720 ILCS 5/12-3.  Plaintiff has shown sufficient evidence of a battery and injury by Officer Cargill to withstand summary judgment: a reasonable jury could find, based on Plaintiff's evidence, that Officer Cargill intentionally caused her bodily harm and made insulting physical contact with her, and that, as a result of Officer Cargill's actions, Plaintiff suffered

---

[11]    Though Defendant-Officers contended in their Motion for Summary Judgment that Officer Dearing could not be held liable for the hate crime, Plaintiff's Response did not address Officer Dearing at all.  Instead, Plaintiff's Response discussed only Officer Cargill in the context of the hate crime.  (Response to Officers' MSJ at 17-18).

bruises, a sprained wrist, and a bite injury. Both Plaintiff's and Dr. Stringer's testimony support her allegations of injury. In addition, the analysis of Plaintiff's excessive force claim above makes clear that if a jury believes Plaintiff's evidence, which it reasonably could, Officer Cargill's actions were without legal justification, in that they violated Plaintiff's Constitutional right to be free from the application of excessive force while in police custody.

In order for a battery to become a hate crime under the IHCA, it must be motivated by the race of the victim. Officer Cargill argues that Plaintiff cannot withstand summary judgment as to this element because, even if Plaintiff's testimony is believed, Officer Cargill only called Plaintiff "nigger" once, shortly before Officer Cargill beat her, and that this is insufficient as a matter of law to support liability under the IHCA.

Case law is scarce on the issue of whether Illinois considers one utterance of such a term prior to a beating sufficient to indicate racial animus under the IHCA's civil remedy. However, the existing cases do indicate that, where a plaintiff offers evidence of such language in connection with one of the crimes listed in the IHCA, this can be sufficient to support liability under the IHCA. In People v. Davis, on appeal of a criminal conviction under the IHCA, an Illinois Appellate Court held that, though the single threatening use of the word "nigger," while "reprehensible and *per se* racist," was not a strong "indication that the assault was motivated by racial animus," it was sufficient to uphold the conviction. 674 N.E.2d 895, 898 (Ill. App. Ct. 1996) (emphasis in original). If this is sufficient evidence to find that a rational trier of fact could find the existence of racial animus beyond a reasonable

doubt, then it is also sufficient evidence for a reasonable jury to find such animus by a preponderance of the evidence.[12]  The District Court for the Northern District of Illinois, applying the IHCA on summary judgment to a case in which white restaurant workers assaulted an African-American family and called them "niggers" several times, found that the plaintiffs had shown sufficient evidence that the workers' conduct was racially motivated to withstand summary judgment.  McCaleb v. Pizza Hut of America, 28 F.Supp.2d 1043, 1049 (N.D. Ill. 1998).

Therefore, taking all reasonable inferences in favor of Plaintiff, the Court finds that Defendant-Officer Cargill's use of this term toward Plaintiff, accompanied shortly thereafter by an illegal beating, is sufficient to allow a reasonable jury to find that Defendant-Officer Cargill's conduct was racially motivated in violation of the IHCA's provision for civil liability.  The use of this term is so inflammatory that a reasonable jury could find that a person would not direct it toward another unless she felt significant racial animus, of the virulence that could motivate a battery, against African-Americans.  Summary judgment in favor of Defendant-Officer Cargill is not appropriate as to this count.

---

[12]     The Davis court heard the appeal of a criminal conviction, and so, viewing the evidence in the light most favorable to the prosecution, had to determine that a "rational trier of fact could have found [the existence of racial animus] beyond a reasonable doubt."  674 N.E.2d at 897.  While this standard of review is obviously distinct from the analysis under a motion for summary judgment, with both more and less stringent tests being applied, analogy can be made to the instant case. Here, the Court must view the evidence in the light most favorable to Plaintiff, and must determine that a reasonable, not merely rational, jury could find the elements by a preponderance of the evidence, rather than the higher beyond-a-reasonable-doubt standard.

### III.    Analysis of Peoria County's and Sheriff McCoy's Motion for Summary Judgment

Defendants Peoria County and Sheriff McCoy also move for summary judgment as to their liability for the Defendant-Officers' conduct.  As an initial matter, the Court must address Defendants Peoria County's and Sheriff McCoy's first argument in their Reply.  In their Reply, Defendants Peoria County and Sheriff McCoy argue that, because Plaintiff failed to respond to their statement of material facts, Plaintiff should be deemed to have admitted those facts, pursuant to Local Rule 7.1(D).   It is true that Plaintiff failed to respond, and that typically this failure is deemed an admission.  However, the situation here is somewhat different from the ordinary Motion for Summary Judgment.  Defendants Peoria County's and Sheriff McCoy's Motion did not restate the statement of undisputed material facts, but incorporated by reference the statement of facts contained in the Defendant-Officers' MSJ.  It seems that Plaintiff failed to respond because she had already responded to those asserted facts in her Response to the Defendant-Officers' MSJ.

Given that the Motions are so closely linked and share the same facts, as shown by Defendants Peoria County's and Sheriff McCoy's willingness to simply incorporate them by reference, the Court finds there will be no prejudice to Defendants Peoria County and Sheriff McCoy in excusing Plaintiff's failure to specifically respond, and will assume that Plaintiff would have also incorporated by reference her responses and additions to the statement of facts in connection with the Defendant-Officers' Motion for Summary Judgment.  The purpose of rules such as Local Rule 7.1(D) is to ensure that the undisputed and disputed facts are clearly identified for the Court and the parties; this has happened here.  In addition,

granting summary judgment for the County and Sheriff because Plaintiff was deemed to have admitted the factual statements of Defendants would result in an inconsistent judgment within the same case: summary judgment against the Defendant-Officers was denied on most of the counts because of significant disputes as to material facts, but would be granted as to the County and Sheriff because of an "admission" of those same facts. The Court will thus exercise its discretion with regard to compliance with the Local Rules and will excuse Plaintiff's technical non-compliance. Waldridge v. American Hoechst Corp., 24 F.3d 918, 923 (7th Cir. 1994) ("Whether to apply such a rule strictly or to overlook any transgression is a matter [left] to the district court's discretion.")

Defendants Peoria County's and Sheriff McCoy's remaining arguments for summary judgment are (1) Sheriff McCoy is immune from suit under the Illinois Tort Immunity Act, (2) Peoria County is not an indispensible party to the suit, (3) neither Sheriff McCoy nor Peoria County can be held liable to Plaintiff because the Defendant-Officers are not liable to Plaintiff, and (4) partial summary judgment should be granted on the issue of punitive damages because the County is prohibited from paying punitive damages.

## A.    Sheriff's Immunity under Illinois Tort Immunity Act

Defendants Peoria County's and Sheriff McCoy's first argument is that Sheriff McCoy is immune under the Illinois Tort Immunity Act for the actions of the Defendant-Officers. As Plaintiff's Complaint and Response make clear, Plaintiff only claims respondeat superior liability on the part of Sheriff McCoy for the IHCA charge, not for the federal § 1983 claims. It is well established that there is no

respondeat superior liability for § 1983 claims.  Monell v. Dep't of Soc. Services, 436 U.S. 658, 694 (1978).

Defendant Sheriff McCoy claims that the Illinois Tort Immunity Act ("ITIA"), § 2-204, prohibits liability on the part of a sheriff for the conduct of his employees, citing Thomas v. Sheahan for the proposition that this section of the "Tort Immunity Act prohibits liability on the basis of respondeat superior."  745 ILCS 10/2-204; Thomas v. Sheahan, 499 F.Supp.2d 1062, 1100 (N.D. Ill. 2007).  While Thomas does make this statement, Defendant missed the crucial first clause of the statutory language, which Thomas did not quote: "[e]xcept as otherwise provided by statute."  745 ILCS 10/2-204 ("Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person.").  Section 2-204 prohibits the Sheriff's liability unless another statute specifically provides for it.

In Brown v. King, in which a sheriff was sued in his official capacity on the basis of respondeat superior for his subordinate's intentional actions, the Illinois Appellate Court for the First District held that § 9-102 of the ITIA is such a statute providing for liability: "Under section 9-102, the Sheriff is required to pay any tort compensatory damages judgment for which he or an employee acting within the scope of his employment is liable so long as the conduct was willful and wanton." 767 N.E.2d 357, 362 (Ill.App.Ct. 2001)).  Thus, the ITIA not only provides for immunity from certain suits, it also provides for liability, as in § 9-102.  Id. at 723 (citing In re Consolidated Objections to Tax Levies of School District No. 205, 739 N.E.2d 508 (Ill. 2000)).  To hold, as Defendant Sheriff McCoy would have it, that §

2-204 precludes all respondeat liability on the part of a sheriff would ignore the language of § 2-204 itself, would be contrary to the authoritative Illinois interpretation,[13] and would render the ITIA internally inconsistent.[14]

Under both § 9-102 and the common-law respondeat superior, a sheriff is liable for his employee's actions if the employee was acting within the scope of her employment.  745 ILCS 10/9-102; <u>Brown</u>, 767 N.E.2d at 361-63.  Thus, even if Officer Cargill committed the hate crime alleged, Sheriff McCoy could not be held liable unless she was acting within the scope of her employment.  Though Defendants' Answer disputed the Complaint's assertion that Officer Cargill was acting within the scope of her employment when she allegedly violated the IHCA,

---

[13]    As the Seventh Circuit held in <u>Allstate Ins. Co. v. Menards, Inc.</u>, "in the absence of prevailing authority from the state's highest court, federal courts ought to give great weight to the holdings of the state's intermediate appellate.  285 F.3d 630, 637 (7th Cir.2002).  The federal courts, when dealing with state law issues, should only depart from the state's appellate courts if "there are persuasive indications" that the state's highest court would disagree.  <u>Id</u>.  While some federal district courts have determined, based on 55 ILCS 5/3-6016, that a sheriff cannot be held liable under Illinois law for the intentional actions of their employees, this recent Illinois appellate court decision is entitled to greater weight as to the interpretation of Illinois statutes; <u>Brown</u> specifically discussed 55 ILCS 5/3-6016 and rejected the claim that it precluded liability.  328 Ill.App.3d at 724-26.  Here, the Court has found no indication that the Illinois Supreme Court disapproves of the <u>Brown</u> court's decision, and so will follow <u>Brown</u> as an interpretation of the ITIA that is deserving of deference.

[14]    Defendant Sheriff McCoy attempts to distinguish <u>Brown</u> by stating that, because it does not specifically mention § 2-204, it is not controlling on the issue of Sheriff McCoy's claimed immunity.  (County Reply at 2-3).  This ignores the clear statutory language of § 2-204, which, as discussed above, provides immunity <u>only</u> when another statute does not specifically provide for liability.  Here, as the <u>Brown</u> court recognized, § 9-102 is a statute that specifically provides for a sheriff's liability for the willful and wanton conduct of his employees in the scope of their employment.   Both of these sections are within the ITIA; it would be nonsensical for the legislature to provide for liability in one section while simultaneously prohibiting it in another.

Defendant Sheriff McCoy does not now base his Motion for Summary Judgment on that argument, and neither party addressed it in their respective statements of material facts.  For the purposes of this motion, the argument is deemed waived.[15]  Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 736 (7th Cir. 2006) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision.").

Summary judgment as to Sheriff McCoy's liability is inappropriate.  First, § 2-204 of the ITIA does not preclude liability.  Further, for the purposes of this motion, Defendants have waived any argument that Officer Cargill was not acting within the scope of her employment.  Finally, if Officer Cargill committed a hate crime against Plaintiff, her actions were intentional and can thus support the

---

[15]    Even if Defendants had not waived this argument, summary judgment in favor of Sheriff McCoy on the issue of liability for Officer Cargill's actions would be inappropriate, as there would remain a disputed issue of fact as to whether she was acting within the scope of her employment.  An employee's conduct is within the scope of employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master."  Pyne v. Witmer, 543 N.E.2d 1304, 1308 (Ill. 1989) (quoting RESTATEMENT (SECOND) OF AGENCY § 228 (1958)).  In Illinois, "[s]ummary judgment is generally inappropriate when scope of employment is at issue.  Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting."  Pyne, 543 N.E.2d at 1308.  Even criminal actions by employees, though not authorized by the employer, can support respondeat liability, so long as the acts are otherwise within the scope of employment.  Brown, 767 N.E.2d at 361.  Here, Officer Cargill was on-duty and was responsible for the intake area of the jail on the night of January 20, 2008.  In addition, she admits that when she entered Plaintiff's cell, she intended to remove Plaintiff's jewelry because jewelry was prohibited for jail inmates; her actions were thus undertaken in order to carry out her duties.  On the record before it, the Court could not say as a matter of law that Officer Cargill was not acting within the scope of her employment when she allegedly violated the IHCA.

Sheriff's § 9-102 or respondeat superior liability.[16]  Therefore, summary judgment as to Sheriff McCoy's official liability under § 9-102 or respondeat superior for the alleged IHCA violation is inappropriate.

> **B.     Peoria County's Role as a Defendant**

Defendants Peoria County and Sheriff McCoy next argue that Askew v. Sheriff of Cook County, Ill. shows that Peoria County is not a required party to this suit, and that the County must therefore be dismissed from the suit.  In Askew, the Seventh Circuit held that the District Court had erred in dismissing a case for plaintiff's failure to join the county.  568 F.3d 632 (7th Cir. 2009).  It did not hold that a plaintiff may not join a county as a defendant.  Id.  In fact, where a plaintiff sues a sheriff in his official capacity, Askew reiterates that the county is an indispensable party to the suit under Federal Rule of Civil Procedure 19.  Id. at 636 (quoting Carver v. Sheriff of LaSalle County, 324 F.3d 947, 948 (7th Cir. 2003)).  As Plaintiff is suing Sheriff McCoy in his official capacity, Peoria County is a proper and required party to the suit and will not be dismissed.  This is not an appropriate basis on which to grant summary judgment for Defendant Peoria County.

> **C.     Defendants Peoria County's and Sheriff McCoy's Remaining Arguments**

Plaintiff does not contest Defendants Peoria County's and Sheriff McCoy's last two arguments, and they are easily disposed of.  First, summary judgment was denied on all Counts against Defendant-Officers except the IHCA charge against Officer Dearing.  It was granted in favor of Officer Dearing as to the IHCA charge.

---

[16]     Brown held that only intentional, willful, and/or wanton conduct by an officer can support § 9-102 liability against a sheriff.  767 N.E.2d at 362-64.

Therefore, summary judgment is granted in favor of Sheriff McCoy and Peoria County for the IHCA charge against Officer Dearing, as their liability would be derivative of his.

Finally, Plaintiff's Complaint only asks for punitive damages against the Defendant-Officers individually. Defendant Peoria County asserts that the Complaint implicitly, and improperly, asked for punitive damages against the County by its request that the Court order the County to indemnify Defendant-Officers for *any* judgment. While this might be read as an implicit request for punitive damages from the County, the Court will construe the Complaint to request only the damages that are proper and for which it specifically asks. In other words, the County will not be required to indemnify the Defendant-Officers in the event that they are required to pay punitive damages. Given the fact that indemnification for punitive damages was not requested by Plaintiff, partial summary judgment in favor of the County on this issue is unnecessary.

## MOTIONS FOR SANCTIONS

Counsel for the parties to this suit have filed cross-motions for sanctions against each other, each alleging violations of Federal Rule of Civil Procedure 11(b). Rule 11(b) states that an attorney filing a document with a court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the document "is not being presented for any improper purpose;" that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" and that the factual

assertions or denials are, or will be, based on evidentiary support or reasonable belief. FED. R. CIV. P. 11. Rule 11(c) allows a court, in its discretion, to impose sanctions upon a party who violates the provisions of Rule 11(b). The purpose of Rule 11(c) is "to deter [future] abusive litigation practices." Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1013 (7th Cir. 2004). Plaintiff requests an award of attorney's fees.[17] Defendants' Motion for Sanctions requests the dismissal of Plaintiff's entire case.[18]

Sanctions may be granted in the trial court's discretion. In addition, the Court "should not ordinarily have to explain its denial of a motion for sanctions."

---

[17]    Plaintiff argues that sanctions are proper because (1) Defendants filed a motion for summary judgment though there are disputed issues of material fact on the excessive force claim, in contravention of established law; (2) Defendants misstated the law applicable to excessive force cases; (3) Defendants' "de minimis injuries" argument is contrary to law; (4) Defendants misstated the elements of an excessive force claim; (5) Defendants filed a motion for summary judgment though there are disputed issues of material fact on failure to intervene claim, in contravention of established law; (6) Defendants' qualified immunity argument lacks merit; (7) Defendants' argument on Plaintiff's hate crime claim lacks merit; (8) Defendants' spoliation of evidence argument is defamatory; (9) Defendants recited the wrong standard of review for summary judgment; and (10) Defendants misstated that there is confusion among the courts.

[18]    Defendants argue, first, that Plaintiff's counsel misrepresented facts and law to the Court in Plaintiff's motion for sanctions because, contrary to Plaintiff's counsel's assertion, Plaintiff's counsel's firm has requested sanctions in other cases, Plaintiff's counsel threatened sanctions prior to receipt of Defendants' Motions for Summary Judgment, and Plaintiff's counsel did not dispute every legal argument made by defense counsel in its Motions for Summary Judgment. In addition, Defendants argue that Plaintiff's counsel's motion for sanctions itself violated Rule 11's safe-harbor provision. Finally, Defendants argue that Plaintiff's Motion for Sanctions violates Rule 11 because it has no basis in law, as Plaintiff's counsel requests sanctions for filing a Motion for Summary Judgment, though seeking summary judgment is not sanctionable; Plaintiff's counsel argues that it is a well-settled principle that reasonableness applies to excessive force cases; Plaintiff's counsel persists in arguments already shown to be erroneous; Plaintiff's counsel requests sanctions for arguments that were never made; and Plaintiff's counsel states conclusions of law without citation to authority.

FED. R. CIV. P. 11, Advisory Committee Notes, 1993 Amendments, Subdivision (b)
and (c).  However, the Court will discuss briefly the contentions of the parties, as it
believes that each has run quite close to the border of sanctionable behavior.
Because the Court does not in its discretion believe that these missteps were willful,
abusive, or made in bad faith, and is of the opinion that a warning will suffice in
this case "to deter [future] abusive litigation practices," the imposition of sanctions
is not warranted in this case, and both Motions for Sanctions are denied.

      Plaintiff is correct that Defendants' counsel has made some mistakes in the
Motions for Summary Judgment, though the Court will not impose sanctions
because they appear to be merely the results of an effort at enthusiastic advocacy or
errors not made in bad faith.  The Court does not find the filing of a Motion for
Summary Judgment to be sanctionable in most cases, even where there Court
eventually finds, as it did here, that there are disputed issues of material fact that
preclude the grant of summary judgment.  It is true that defense counsel was wrong
to state that a plaintiff's own testimony as to her personal knowledge cannot defeat
a motion for summary judgment, as the Court explained above, but given the fact
that, in some cases the non-moving party's testimony is insufficient (such as when a
plaintiff testifies to her unfounded speculations about another's motivations), the
mistake was understandable.  Though defense counsel should have cited to the
directly-applicable, and abundant, law on summary judgment standards, its
attempt to make an argument that Ashcroft v. Iqbal sets the floor for summary
judgment was rational.  In addition, Defendants' legal arguments as to qualified

immunity and the IHCA claim are reasonable, though they did not prevail on summary judgment.

In other areas, though, the Court finds that Defendants' counsel's misstatements of the law were more egregious.  As the Court has explained throughout the analysis of the Motions for Summary Judgment, Defendants misstated the law applicable to excessive force cases in several ways, most of which are also highlighted by Plaintiff's Motion for Sanctions.[19]  Though sanctions will not be imposed, Defendants' counsel is admonished that more careful legal research and analysis is advised in the future.  Finally, the Court agrees that Defendants' spoliation of evidence argument was improper, as was explained above.  To imply that the alleged victim of a crime should be subject to an adverse presumption as a penalty for being unaware that she could or should obtain certain forensic testing of her wounds is incredible.

In their Motion for Sanctions, Defendants also correctly point out that Plaintiff's counsel has made some mistakes of his own in filing the Motion for Sanctions, though they will not result in sanctions against him.  Namely, Plaintiff's counsel appears to have been somewhat less than truthful in his (unnecessary) assertion that his firm has never requested sanctions.  Also, Plaintiff's counsel

---

[19]     Namely, Defendants claimed that the Eighth Amendment's standards, rather than reasonableness, apply to arrestees and detainees; that merely "de minimis" injuries, as a matter of law, could not support an excessive force claim; that the removal of Plaintiff's jewelry transformed this into a conditions of confinement case; and that there is "confusion" as to the appropriate standard applied to arrestees and/or detainees.  None of these are supportable under Seventh Circuit precedent, as the Court has explained in addressing these contentions within its analysis of the Motions for Summary Judgment, above.

threatened sanctions prior to even receiving Defendants' Motions for Summary Judgment,[20] and Plaintiff's counsel may have violated the 21-day safe harbor provision of Rule 11 by filing his Motion for Sanctions with the Court one or two days too early.  Finally, while Defendants' counsel did misstate the law in the Defendant-Officers' Motion for Summary Judgment, the use of demeaning language toward Defendants' counsel and a Motion for Sanctions were not the appropriate response from Plaintiff's counsel.

Counsel for both parties have engaged in behavior that has hindered the Court's work: Defendants' counsel by her persistent misstatements of the law and seemingly-retaliatory Motion for Sanctions, and Plaintiff's counsel by his ridicule of Defense counsel and unnecessary Motion for Sanctions.  Both parties appear to be using these Motions for Sanctions and their Responses as a chance to clarify and justify the positions they have taken in regards to the Motions for Summary Judgment.  FED. R. CIV. P. 11, Advisory Committee Notes, 1993 Amendments, Subdivision (b) and (c) (motion for sanctions should not "be prepared to emphasize the merits of a party's position").  The Court will not grant the Motion for Sanctions of either party.

## CONCLUSION

The Officers' Motion for Summary Judgment is GRANTED as to IHCA charge against Officer Dearing only, and is DENIED as to all other counts against

---

[20]   Perhaps an attorney could legitimately warn opposing counsel that a motion for summary judgment, where there are obvious factual disputes, will result in a motion for sanctions.  However, there are many legal bases on which a party might move for summary judgment notwithstanding factual disputes, such that in this case it was inappropriate to threaten sanctions prior to even seeing the legal bases of Defendants' Motions for Summary Judgment.

the Defendant-Officers.  The County and Sheriff McCoy's Motion for Summary Judgment is GRANTED on the issue of liability resulting from the IHCA charge against Officer Dearing only, and is DENIED as to all other claims against Peoria County and Sheriff McCoy.  Both Plaintiff's and Defendants' Motions for Sanctions are DENIED.  Additionally, the Final Pretrial Conference is rescheduled for December 3, 2009 at 2:30 p.m.  The parties will meet with Judge McDade's law clerk at 1:30 p.m. on that date.  Further, the jury trial is rescheduled for January 11, 2010 at 9:00 a.m.

Entered this <u>8th</u> day of October, 2009

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States District Judge
